**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| CHLOE SCHWENKE,<br>9209 Wendell Street<br>Silver Spring, MD 20901,<br><br>*Plaintiff*<br><br>v.<br><br>ASSOCIATION OF WRITERS' & WRITING PROGRAMS,<br>5700 Rivertech Court, Ste. 225<br>Riverdale, MD 20737-1250<br><br>*Defendant* | Civil Action No. |

**COMPLAINT**

Plaintiff Chloe Schwenke ("Dr. Schwenke" or "Plaintiff") through her attorneys, Clark Law Group, PLLC hereby alleges as follows:

**NATURE OF ACTION**

1. This is a challenge to the Association of Writers & Writing Programs' ("AWP" or "Defendant") of gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Fairness for All Marylanders Act of 2014, Md. Code Ann., State Gov't § 20-606(a)(1) (West).

**JURISDICTION AND VENUE**

2. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

3.  This Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and Plaintiff seeks redress for violations of civil rights.

4.  Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction of Plaintiff's state law claims because the violations arise out of the same case or controversy as her federal claims.

5.  Pursuant to Md. Code, Cts. & Jud. Proc. § 6-102, the Court has personal jurisdiction over Defendant because it is organized under the laws of the state of Maryland.

6.  Venue is appropriate pursuant to Md. Code Ann., State Gov't § 20-1013 because Prince George's County is the county where the alleged unlawful employment practice occurred.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.  All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

8.  On November 18, 2019, Plaintiff submitted a formal complaint to the U.S. Equal Employment Opportunity Commission.

9.  Plaintiff has requested her right to sue letter from the EEOC.

10. Plaintiff has filed this Complaint within ninety (90) days of receipt of the U.S. Equal Employment Opportunity Commission's decision.

11. Accordingly, Plaintiff has administratively exhausted and timely filed her claim against Defendant.

## PARTIES

12. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

13. Plaintiff is an openly transgender woman, a resident of Maryland, and a former employee of Defendant.

14. Defendant is a non-profit with its principle office in Prince George's County, Maryland.

**FACTUAL ALLEGATIONS**

15. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

16. In April 2018, Dr. Schwenke joined AWP as Interim Executive Director.

17. After reviewing the existing business model of AWP, Dr. Schwenke determined that it was not functionally or financially viable, and set about creating a new business model which would allow AWP to become fully independent and financially sustainable over the long term. This new business model, which Dr. Schwenke presented to the board of AWP ("the Board"), required a somewhat costly three-year transition period, but one which AWP's financial reserves were well-equipped to handle.

18. After the proposal was presented to the Board, complete with the three-year planned transition period, the Board formally voted to support the transition to the new business model.

19. Following the vote, Dr. Schwenke kept the Board informed as to the progress of the transition through weekly telephone meetings with the chair and separate weekly telephone meetings with the treasurer, other regular memoranda and updates to the full Board, and regular attendance at all Board meetings.

20. In addition to helping to transition AWP to the new business model, Dr. Schwenke took an active role in leading the production of a comprehensive five-year strategic plan (with Board participation and formal approval), managing the AWP annual conferences, creating new and essential in-house HR and accounts capabilities and procedures,

upgrading its social media presence, developing new internal revenue-generating capacities and initiatives, diversifying the Board membership, securing overdue salary increases for all AWP staff, and taking appropriate measures to resolve AWP's office lease.

21. Dr. Schwenke received numerous positive reviews for her performance as Interim Executive Director, and the term of the contract was extended by the Board on three separate occasions.

22. When AWP eventually sought a new permanent Executive Director in 2019, Dr. Schwenke competed for the position through a formal nationwide recruitment search process, and was chosen for the role by the Board, with the approval of all Board members apart from Rob Trott and Bonnie Culver, both of whom did not participate in the hiring process.

23. Throughout her tenure at AWP, Dr. Schwenke never once received a single message of discipline, criticism, or complaint from anyone on the Board, nor did she ever receive any formal review for her performance despite her submission to the Board of detailed performance evaluation materials.

24. Rob Trott, who was the only member of the Board who lived in the DC metro area, notably avoided coming to AWP Board meetings while Dr. Schwenke was Interim and then later permanent Executive Director. Additionally, he refused to meet with Dr. Schwenke, even about matters which a Board member trained in real estate law in the area would be reasonably expected to participate in, such as the AWP lease renegotiations with the University of Maryland.

25. In July 2019, less than six months after Dr. Schwenke had assumed the Executive Director position, Mr. Trott began to harshly criticize the character and actions of Dr. Schwenke in a series of wildly disparaging emails which he sent to the entire Board.

26. Several other Board members agreed that these emails from Mr. Trott were sexist, bullying, and wildly inappropriate, and voiced their concerns in email responses. However, Mr. Trott continued his behavior.

27. Dr. Schwenke attempted to contact Mr. Trott by email, and to resolve any differences of opinion as to the direction of AWP by creating a dialogue. However, Mr. Trott refused to speak with her, and instead used cut and paste selections of her email to further disparage her and her approach to running AWP, which he then sent to the entire Board.

28. At or around the same time, and with no communication with Dr. Schwenke, Board Member Dr. Bonnie Culver recruited two of Dr. Schwenke's most senior staff to carry out a surreptitious survey of staff to see if Dr. Schwenke was the cause of purported bad morale at AWP. Dr. Schwenke was not informed of this Board member's action, and she was not made aware of the fact that a small number of routine staff grievances which she was already working to resolve were being presented to Board members by one or more disgruntled AWP staff as constituting a significant morale problem.

29. When Dr. Schwenke became aware of these actions, and of the allegations of a serious morale problem, she immediately requested urgent clarification from the Board and from senior staff of both the nature and extent of the alleged serious morale problem and the actions being taken unilaterally by the Board to address it. Dr. Culver then asserted that she believed that Dr. Schwenke would retaliate against the staff who had, upon Dr.

Culver's instructions, secretly reported to the Board, although Dr. Schwenke had never taken any retaliatory action against anyone at AWP for any reason.

30. Following this incident, Dr. Schwenke enlisted the acting Finance Director, Kim Griffin and the then Deputy Executive Director Diane Zinna (one of the two people who was surreptitiously reporting to the Board) to meet one-on-one with each member of staff to determine if there were genuine morale issues. Complaints were few, and Dr. Schwenke immediately raised this issue at the regular weekly all-staff meeting and at the biweekly senior staff meeting. She also immediately organized a team-building intervention with an outside facilitator.

31. Despite Dr. Schwenke's efforts to address and resolve concerns, Mr. Trott and Dr. Culver convened a secret telephonic Board meeting later that month. A vote was quickly called and carried that Dr. Schwenke be terminated, even though an in-person Board meeting which could have been used to address these or any other concerns was already on the schedule for November. Dr. Schwenke was not advised of the assertions or accusations against her and was given no opportunity to respond prior to the Board's vote to terminate her services.

32. At this meeting, the two Board members who were most familiar with Dr. Schwenke's performance as Executive Director, Robin Reagler (chair) and David Haynes (treasurer, previous chair), resigned for reasons which have never been made clear to either Dr. Schwenke or to the AWP staff.

33. On Saturday, September 7, 2019, Dr. Schwenke was terminated, and learned for the first time that the formal basis was for her termination was allegedly based on three factors: 1) concern about the financial well-being of AWP; 2) an assertion that the workplace

environment (morale) had eroded to unhealthy levels; and 3) an assertion that the E.D. had engaged in unauthorized financial expenditures.

34. All three of these stated concerns were invalid: at the time of Dr. Schwenke's termination, AWP was financially stable, the workplace morale was healthy, and Dr. Schwenke had not engaged in any unauthorized financial expenditures whatsoever.

35. In the fifty-two-year history of AWP, Dr. Schwenke is the only transgender person to ever serve in any AWP leadership role, and the only woman to ever serve as a permanent Executive Director. AWP's termination of Dr. Schwenke was not only baseless, but was discriminatory.

36. After her termination, Dr. Schwenke filed with the State of Maryland DLLR for unemployment insurance benefits, noting in their forms that she had been terminated due to discrimination. This led to a hearing, conducted by telephone separately with each party. Following that review, DLLR reached a determination that Chloe Schwenke's termination was not justified on the basis of any claim of misconduct.

37. Dr. Schwenke's termination came as a devastating surprise to her, and has severely damaged her professional reputation. It has caused and continues to cause her intense stress, trauma, disruption, deep financial insecurity and financial loss, and acute pain and sadness both in her life and in her career.

## COUNT I: GENDER DISCRIMINATION

38. All of the allegations contained in the foregoing paragraphs of this complaint are incorporated by reference herein as if the same were set forth at length.

39. Dr. Schwenke is a transgender woman.

40. The fact that Dr. Schwenke is a transgender woman was readily apparent to Defendant.

41. On September 7, 2019, Defendant terminated Dr. Schwenke.

42. Defendant claimed that Dr. Schwenke was terminated due to three factors: 1) concern about the financial well-being of AWP; 2) concern that morale had eroded to unhealthy levels; and 3) concern that the Dr. Schwenke had engaged in unauthorized financial expenditures.

43. None of these three factors was true or accurate to reality.

44. Defendants terminated Dr. Schwenke because of her gender, and gender identity as a transgender woman.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff respectfully requests this Court to enter judgment in her favor and award the following relief:

A. Issue an Order declaring that Defendant's actions and omissions violated Plaintiff's rights under Title VII;

B. Award Plaintiff back pay and compensatory damages for her emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and nonpecuniary losses in an amount to be determined by the jury;

C. Award Plaintiff reinstatement, or in the alternative, front pay;

D. Award Plaintiff reasonable attorneys' fees and court costs; and

E. Award Plaintiff such other equitable relief as this Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for any and all issues of fact.

Date: April 25, 2020

Respectfully submitted,

/s/ Denise M. Clark
Denise M. Clark (420480)
Clark Law Group, PLLC
1100 Connecticut Ave, N.W.,
Suite 920
Washington, D.C. 20036
(202) 293-0015
dmclark@benefitcounsel.com
*Counsel for Plaintiff*