```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

|  |  |
|---|---|
| CHLOE SCHWENKE | : |
|  | : |
| v. | :   Civil Action No. DKC 20-1234 |
|  | : |
| ASSOCIATION OF WRITERS & WRITING PROGRAMS | : |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case is a motion to dismiss filed by Defendant Association of Writers & Writing Programs ("AWP"). (ECF No. 3). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be denied.

**I.   Background**

Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiff. Plaintiff Chloe Schwenke ("Dr. Schwenke") is a resident of Maryland and an openly transgender woman. In April 2018, Dr. Schwenke started as Interim Executive Director for AWP, a non-profit supporting and advocating for writers, whose principal office is in Prince George's County, Maryland. After receiving "numerous positive reviews for her performance" and three contract extensions by AWP's Board in this interim role, she was eventually

brought on as permanent Executive Director sometime in early 2019. She received the approval of all but two of the Board members: Rob Trott and Dr. Bonnie Culver, who did not take part in the hiring process. Dr. Schwenke alleges that, during her tenure, Mr. Trott avoided interacting with her, even on matters where his expertise would have been useful to the Board. She asserts that her performance was never brought into question, through a formal review process or otherwise.

Plaintiff claims that, in July 2019, months after she had been hired as permanent director, "Mr. Trott began to harshly criticize [her] character and actions . . . in a series of wildly disparaging emails which he sent to the entire Board."

She alleges that, at the time, numerous other Board members "agreed that these emails from Mr. Trott were sexist, bullying, and wildly inappropriate, and voiced their concerns in email responses." Plaintiff reports that Mr. Trott refused to speak to her despite her attempt to reach out to him privately over email to "resolve any difference," and, instead, copied and pasted selections of her email that he used further to criticize her and her leadership to the entire Board. The specific contents or copies of these emails are not produced or referred to in the complaint, however.

Plaintiff alleges that it was around this time that Dr. Culver "recruited" two of Plaintiff's "most senior staff to carry out a

surreptitious survey of staff" to see if Plaintiff was the cause of purported bad morale among staff at AWP. She claims that she was not made aware of these efforts or "a small number of routine staff grievances" that were being presented to the Board by "disgruntled AWP staff" to argue there was a "significant morale problem." When she did learn of these concerns, she requested an explanation, and Dr. Culver told her that these discussions were held in secret to prevent her from retaliating against the staff, even though, she argues, she has never acted in that fashion against anyone at AWP.

Plaintiff asserts that, to rectify the issue, she enlisted two company officials to meet with staff one-on-one to root out whether there were "genuine morale issues." Plaintiff reports these efforts yielded few complaints, but that she "raised the issue" within an all-staff and a senior staff meeting anyway, and "organized a team-building intervention" with a third-party "facilitator" to ensure morale remained high.

Plaintiff says that, despite these efforts, Mr. Trott and Dr. Culver called "a secret telephonic Board meeting later that month [sometime in late summer]" in which a vote "was quickly called and carried" to terminate her. She argues that this was highly irregular and was done despite an upcoming meeting already scheduled for November. She says that, during the "secret" meeting, two Board members "most familiar" with her work, Chair

3

Robin Reagler and Treasurer David Haynes, resigned without explanation to her or the AWP staff. She was officially terminated on September 7, 2019, and was informed, for the first time, that the "formal bas[e]s" of her firing were: 1) "concern" over AWP's financial outlook, 2) an alleged erosion of workplace morale, and 3) a claim that she had made unauthorized expenditures. She asserts that these claims are false: she says that AWP was "financially stable," staff morale was "healthy," and she "had not engaged in any" of the alleged unauthorized transactions. Instead, she says, the firing was discrimination against her "gender, and gender identity as a transgender woman" and animated by the fact that she was the first woman to serve as permanent Executive Director and the first transgender person to work in a leadership role at AWP.

Plaintiff reports first filing with Maryland Department of Labor, Licensing and Regulation ("DLLR") for "unemployment insurance benefits." She alleged that she'd been terminated due to discrimination in the DLLR forms. She also reports a DLLR hearing conducted by telephone "with each party" that found that her "termination was not justified on the basis of any claim of misconduct." She says that, prior to filing her discrimination claims in this court, she satisfied the administrative exhaustion requirements. She asserts that, on November 18, 2019, she filed a formal complaint with the U.S. Equal Employment Opportunity

4

Commission ("E.E.O.C.") and "has requested her right to sue letter."[1] She reports that this action, filed on May 17, 2020, was filed within ninety days, as required.

Plaintiff's complaint contains a single count of gender discrimination under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Fairness for All Marylanders Act of 2014, Md.Code Ann., State Gov't § 20-606(a)(1).[2] She asks for a declaration "that Defendant's actions and omissions violated Plaintiff's rights under Title VII," and requests backpay and compensatory damages, citing "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life," as well as reinstatement and attorneys' fees and costs.

## II.   Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient,

---

[1] Plaintiff does not attach her EEOC complaint or a right to sue letter, but Defendant does not challenge her complaint on exhaustion grounds.

[2] This act, among other things, added the term "gender identity" to the prohibited forms of employment discrimination under the Fair Employment Practices Act ("FEPA"), Md.Code Ann., State Gov't § 20-606(a).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**III. Analysis**

Without exploring the particulars of either law cited by Plaintiff, Defendant argues that "[u]nder either statute, to state a sex/transgender discrimination claim, Plaintiff was required to plead facts that show that 'but for' her transgender status she would not have been terminated from her Executive Director position." Confusingly, as support, Defendant cites to the grant of certiorari in *Bostock v. Clayton Cty., Ga.*, 139 S.Ct. 1599 (2019), instead of to the Supreme Court's eventual decision in that case, 140 S.Ct. 1731 (2020), which was issued weeks before.[3]

---

[3] *Bostock* does little to help Defendant and, in fact, is the case that established that an employer *can* be held liable under

6

Regardless, Defendant argues that Plaintiff fails to connect her gender identity and its stated, valid, and non-discriminatory reasons for firing her, because she does not declare the latter "an unlawful pretext."  (ECF No. 3-1, at 2).  It also argues on the merits that Mr. Trott and Dr. Culver had no ability single-handedly to fire her and implies they were targeted in this lawsuit as "the only Board members involved in Plaintiff's termination that were not also involved in Plaintiff's hiring 'as an openly transgender woman.'"  (*Id.*).

Plaintiff argues in her opposition that she is "not required to allege all of the elements of her prima facie case in her complaint . . . because [these] elements are 'an evidentiary standard, not a pleading requirement.'"  (ECF No. 5, at 4) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002) and citing *McCleary-Evans v. Maryland Dept. of Transp.*, 780 F. 3d 582, 585 (4th Cir. 2015)).  Indeed, in *Swierkiewicz*, the Supreme Court said "if a plaintiff is able to produce direct evidence of discrimination, he may prevail without proving all the elements." *Swierkiewicz*, 534 U.S. at 511.  Although she does not attach them to her complaint, Plaintiff describes emails from Mr. Trott that evince discriminatory animus toward Dr. Schwenke as a transgender

---

Title VII for firing someone "because of" their "transgender status," as that form of discrimination "necessarily entails discrimination based on sex."  *Id.* at 1746-47.

7

woman and that, when coupled with the abrupt, secretive and atypical way in which she was terminated, demonstrate that but for her gender identity, she would not have been terminated. (ECF No. 5, at 3).

As a threshold matter, it must be determined whether the state law claim should be analyzed apart from the Title VII claim. Plaintiff makes general allegations incorporated into both, and Defendant does not differentiate between the two in its motion to dismiss. In fact, neither party clearly lays out the required elements of discrimination under either law.[4] Nevertheless, the two are coterminous and will be treated as such.

There is scant caselaw on this section of the Fairness for all Marylanders Act, but general treatment of FEPA protections is instructive. As the Court of Appeals of Maryland has explained, "There are relatively few appellate decisions interpreting Maryland's FEPA," so Maryland courts have themselves looked to the federal courts for guidance in their treatment of federal anti-discrimination legislation. *Peninsula Reg'l Med. Ctr. V. Adkins*, 448 Md. 197, 217-18 (2016) (finding a genuine issue of material

---

[4] Aside from *Bostock*, the only other caselaw on which AWP relies is *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), in support of its assertion that "the complaint fails to state a claim for unlawful termination based on sex/transgender status." While *Birmingham* affirmed the granting of a motion to dismiss for failure to state a claim, the appeal was from a bankruptcy proceeding that had nothing to do with discrimination.

fact as to whether employee was terminated because of her disability). Judge Titus has explained that

> FEPA is the state law analogue to Title VII, and therefore to state a claim of disparate treatment sex discrimination, [a plaintiff] must allege sufficient facts for the court to infer that she is a member of a protected class; (2) she had satisfactory job performance; (3) she was subjected to an adverse employment action; and (4) similar situated employees outside her class received more favorable treatment. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

*Alexander v. Marriot Intern, Inc.*, No. RWT 09cv2402, 2011 WL 1231029, at *6 (D.Md. March 29, 2011); *see also Crockett v. SRA Intern.*, 943 F.Supp.2d 565, 572 (citing Md.Code Ann., State Gov't § 20-606(a)) (D.Md. 2013) (dismissing a claim for race discrimination).[5] Thus the elements of each claim are the same, with the expansion of Title VII to include, in its definition of sex discrimination, protections already made in explicit under Maryland Law: those for transgender employees. *Hughley v. JetBlue Airways Corp.,* No. GLR-10-3523, 2020 WL 3451984 (D.Md. June 24, 2020) (citing *Bostock*, 149 S.Ct. at 1754). Both claims require Plaintiff plausibly to state a claim that she was terminated because of her gender identity.

---

[5] FEPA also imposes exhaustion requirements akin to those under Title VII. *See Id.* at 570 (citing Md.Code Ann., State Gov't § 20-1013(a)).

9

AWP's sole argument for dismissal gives "unlawful pretext" and "but for" undue, talismanic qualities by treating the absence of these words as fatal to Plaintiff's claims.  Without using the word pretext, Plaintiff's complaint explicitly states that all three stated reasons given by AWP for her firing were "invalid." (ECF No. 1, ¶ 34).  She goes on to state, "Defendants terminated Dr. Schwenke because of her gender, and gender identity as a transgender woman."  (*Id.*, ¶ 44).  "[B]ecause of" is clearly meant to be synonymous with "but for," and Plaintiff has alleged, in substance, that the three stated reasons for her termination were, in fact, pretextual by labeling them all false.  These inferences are clear, particularly viewed in the light most favorable to Plaintiff, and AWP's overly technical demands of Dr. Schwenke's complaint are rejected.

Plaintiff's state law claim survives for the same reasons her Title VII claim survives.  She has plausibly alleged she performed her job in a satisfactory, if not exemplary fashion, and that but for her gender identity she would not have been terminated.  Dr. Schwenke asserts that Mr. Trott, whom she implies had sway among other Board members, sent emails that she purports showed clear discriminatory animus against her gender identity.  Thereafter, she alleges that Mr. Trott and Dr. Culver, implicitly fueled by this same animus, maintained a consistent campaign to discredit her, an allegation made somewhat more plausible by their lack of

10

involvement in her hiring. As Plaintiff rightly puts it, "Ms. Schwenke has, at the very least, 'nudged [her] claims across the line from conceivable to plausible.'" (ECF No. 5, at 4) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss filed by Defendant will be denied. A separate order will follow.

                                                              /s/
                                    DEBORAH K. CHASANOW
                                    United States District Judge